888 F.2d 898
 281 U.S.App.D.C. 201
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Dennis C. BROWN and Robert H. Schwaninger, Jr., d/b/a Brown
and Schwaninger, Petitioners,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of America.
 No. 88-1868.
 United States Court of Appeals, District of Columbia Circuit.
 Nov. 3, 1989.
 
 Before MIKVA, RUTH B. GINSBURG and HARRY T. WILLIAMS, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This petition was considered on the record from the Federal Communications Commission and was briefed and argued by counsel. After full review of the case, the court is satisfied that appropriate disposition of the petition does not warrant a published opinion. See D.C.Cir.R. 14(c). For the reasons stated by the Federal Communications Commission in its Memorandum Opinion and Order released October 11, 1988, and in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the order on review herein be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15(b)(2).
 
 MEMORANDUM
 
 4
 We deny the petition of Brown and Schwaninger to set aside the decision of the Federal Communications Commission (FCC or Commission) requiring application fees for private land mobile licenses to be transmitted to the Commission by frequency coordinators. The FCC, we are satisfied, has authority to utilize coordinators to forward, along with coordinated applications, the application fees associated with those applications. Observing that the Commission has implemented its fee program in an entirely reasonable manner, we affirm the Commission's decision.
 
 
 5
 While we reject the notion that, as lawyers with license applicant clients, petitioners have standing to challenge the Commission's action, petitioners alternatively allege applicant status themselves. They assert that they are "eligible to file applications" for coordinated frequencies in the Private Radio Services, and that they would in fact "file applications for coordinated frequencies in the future" but for the "threat of having to pay a charge to a coordinator under an unlawful rule." Reply Brief at 4. We will proceed on the assumption that petitioners, as potential applicants, are the "subject of the contested regulatory action" and therefore may be viewed as persons protected or regulated by the Communications Act. See Clarke v. Securities Indus. Ass'n, 479 U.S. 388, 399 (1987).
 
 
 6
 Turning to the merits of petitioners' challenge, we find it beyond genuine dispute that the FCC acted within its authority when it adopted the fee program in question. Section 332(b)(1) of the Communications Act, 47 U.S.C. 332(b)(1), provides in part:
 
 
 7
 The Commission, in coordinating the assignment of frequencies to stations in the private land mobile services and in the fixed services ..., shall have authority to utilize assistance furnished by advisory coordinating committees consisting of individuals who are not officers or employees of the Federal Government.
 
 
 8
 The Commission reasonably interpreted section 332(b)(1) as allowing it to assign to coordinators responsibility for passing on to the agency both applications and application fees, thereby improving the efficiency of assigning frequencies. See Chevron U.S.A. Inc. v. National Resources Defense Council, Inc, 467 U.S. 837, 842-43 (1984).
 
 
 9
 We further point out that the Commission rationally invoked sections 4(i) and 8(f) of the Communications Act as additional authority for its action. Section 4(i) authorizes the FCC "to perform any and all acts, make such rules and regulations, and issue such orders, not inconsistent with this chapter, as may be necessary in the execution of its functions." 47 U.S.C. Sec. 154(i); see New England Tel. & Tel. Co. v. FCC, 826 F.2d 1101, 1108 (D.C.Cir.1987) (section 4(i) serves as the Communications Act's " 'necessary and proper clause' " (quoting North Amer. Telecommunications Ass'n v. FCC, 772 F.2d 1282, 1292 (7th Cir.1985)), cert. denied, 109 S.Ct. 1942 (1989). Section 8(f) similarly directs the Commission to "prescribe appropriate rules and regulations" in its assessment and collection of charges and fees. 47 U.S.C. Sec. 158(f). In sum, all three statutes empowered the FCC to act as it did.
 
 
 10
 The fee forwarding under review complements the application forwarding functions of frequency coordinators established in 1986. No party sought judicial review of the Commission's 1986 Frequency Coordination Decision. Most of petitioners' objections to fee forwarding might have been pressed with regard to application forwarding. Petitioners cannot now challenge the 1986 decision and they have not identified any sound basis for challenging fee collection procedures made to match the application coordinating functions.
 
 
 11
 The FCC sensibly concluded that multiple inefficiencies were generated by allowing applicants (or applicants' attorneys) to forward fees for the applications that frequency coordinators process and file. Report and Order, 2 FCC Rcd. at 952-53; 51 Fed.Reg. 25792, 25796 (1986) (Notice of Proposed Rulemaking). After reviewing public comment on alternative fee collection approaches, the Commission concluded that the adopted procedure would "meet the legitimate needs of all parties without compromising speed of service, delaying the deposit of public monies, or imposing an additional paperwork burden on the public." Report and Order, 2 FCC Rcd. at 953.
 
 
 12
 Petitioners argue that the fee collection program installed by the FCC fails to clarify the legal relationships among applicants, frequency coordinators, and the Commission and therefore arbitrarily leaves applicants without a clear remedy if a frequency coordinator mishandles a fee. Under the Commission's order, the frequency coordinator does not serve as the government's collection agent but as a "conduit," simply passing on to the Commission fee payments together with coordinated applications. If the coordinator is not the Commission's agent, petitioners insist, then the FCC has unlawfully appointed the coordinator to be agent for the applicant without the applicant's consent and right to control the coordinator. As the Commission explained, however, the coordinator does not become the agent of the applicant unless the parties expressly so provide. Report and Order, 2 FCC Rcd. at 947, 953 (1987) (prohibiting commingling coordination fee and statutory fee unless coordinator "has entered into an explicit agency relationship" with applicant).
 
 
 13
 Petitioners alternatively claim that if the Commission did not appoint frequency coordinators to be agents of applicants, then coordinators necessarily must be acting as agents of the Commission, so the Commission should pay for their assistance. We see nothing in section 332(b)(2) or any other legal prescription, however, that blocks the Commission from passing on to applicants the cost of utilizing frequency coordinators.
 
 
 14
 Although the FCC has not designated coordinators as agent for the applicant or for the Commission, various safeguards protect the applicant. First, rather than immediately enclosing fee payments along with applications submitted for coordination, applicants may await the completion of coordination before sending the fee to the coordinator. Memorandum Opinion and Order, 3 FCC Rcd. at 5993. Second, "frequency coordinators are expected to act in a reasonable manner." Id.; see also Report and Order, 2 FCC Rcd. at 953 ("While in possession of the government's payment instruments, the coordinator would be required to take reasonable precautions to prevent their loss or theft."). Third, the Commission maintains oversight of coordinator performance, and complaints charging coordinator neglect or misconduct can result in decertification. Joint Appendix at 221-22. In short, the Commission has sufficiently defined the responsibilities of the coordinator to the applicant and the Commission. Nothing in the Commission's order, or this court's affirmance of it, cuts off legal recourse should a coordinator misplace or misapply the fees that the coordinator is charged with forwarding.